# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

ROSEMARY B. WAY,

                Plaintiff,

-vs-                                Case No.  2:04-cv-341-FtM-33DNF

JOHN E. POTTER, Postmaster General,
U.S. Postal Service, (Southeast Area
Operations), Agency, DAVID CAPUTO,
Individually, and in his capacity as Postal
Supervisor to Rosemary B. Way, RICHARD
BARBER, Individually, and in his capacity
as Postmaster to Rosemary B. Way,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This case arises out of the Plaintiff, Rosemary Way's ("Way") termination from employment

at the United States Post Office.  Way filed suit on June 24, 2004, against the Defendants John E.

Potter, Postmaster General, U.S. Postal Service, (Southeast Area Operations), Agency, David Caputo,

Individually and in his capacity as Postal Supervisor, and Richard Barber, Individually, and in his

capacity as Postmaster (hereinafter "Defendants" unless specifically designated) alleging breach of

contract, unjust enrichment, negligent supervision, assault, intentional infliction of emotional distress,

defamation per se, and gender discrimination.  The Defendants filed a Consolidated Motion to

Substitute the United States of America in Counts Three, Four, Five and Six as Party Defendant,

Motion to Dismiss Counts One, Two, Three, Four, Five and Six as to all Defendants, Motion to

Dismiss Count Seven as to the Defendants, David Caputo and Richard Barber, or, in the Alternative Motion for Summary Judgment and Motion for More Definite Statement as to Count Seven. (Doc. 15). On September 20, 2005, the Honorable Virginia M. Hernandez Covington entered an Order (Doc. 22) referring these motions to this Court for a Report and Recommendation.

**FACTS**[1]

Way began as an employee of the United States Post Office in 1989 in New Jersey.  (Com[2]. ¶8-9).  On June 15, 2002, Way was assigned to Route 41 in the Bonita Springs area known as "the Brooks." (Com ¶10).  Her classification was for a part-time route, but Way claims that due to growth in the area, her route should have been classified as a full-time or regular route.  (Com. ¶11).  David Caputo ("Caputo") was her direct supervisor.  (Com. ¶12).  Way claims that Caputo showed hostility towards her, such as publically reprimanding her for minor infractions, or intimidating her.  (Com. ¶15).  Caputo was heard saying that Way's voice "'ran through his body like nails on a chalkboard'" and at one point he shouted "'yuk'" at her.  (Com. ¶15).

In the second week in September 2002, a count was performed on the volume of mail on Way's route to determine if the route should become full-time.  (Com. ¶16).  Caputo was overheard saying that he would not allow Way's route to become full-time. (Com. ¶17).  Way claims that Caputo strategically left out mail and packages from the count to decrease the overall count for Way's route. (Com. ¶18-19).  Way reported Caputo's behavior to her shop steward.  (Com. ¶20).

---

[1]  The facts are taken from the Complaint for Damages (Doc. 1).

[2]  "Com" refers to the Complaint (Doc. 1).

On September 14, 2002, Caputo called Way into his office and forced her to watch him manipulate the mail count for her route. (Com. ¶21). Way was forced to sign a document verifying Caputo's count or face termination. (Com. ¶21). In October 2002, when Way's vehicle broke down, Caputo sent out a support vehicle to help her but told her that he would not send another support vehicle to her ever. (Com. ¶24). Caputo later refused Way the use of the support vehicle while her vehicle was being repaired. (Com. ¶25).

On October 10, 2002, Way called in to Caputo to tell him she was sick. (Com. ¶26). Richard Barber, ("Barber") the Postmaster at the Bonita Springs Post Office went to Way's house to investigate her illness. (Com. ¶26). Way called the Post Office and spoke to Barber and Caputo on a speaker phone. Way claims that they berated her for telling Caputo that she had a stress headache in the morning, whereas Way told them that she had a migraine headache. (Com. ¶27-28). Way was prevented from returning to work until she obtained a written note from a doctor. (Com. ¶28).

On October 15, 2002, Way borrowed a postal jeep from a neighboring postal carrier. (Com. ¶29). The door of the jeep jammed, so Way drove the jeep to the loading dock at the Post Office, took off her seatbelt, and existed the jeep. (Com. ¶30-32). Barber yelled at Way, and asked her why her seatbelt had been unbuckled. (Com. ¶32). Way was written up for a seatbelt violation. (Com. ¶34). Way agreed to sign the citation based upon the shop steward suggesting that she file a grievance. (Com. ¶34). A male employee was also stopped for having his door open and for failing to wear a seatbelt, however, he only received a verbal warning. (Com. ¶35-36).

At the end of the month of October 2002, Way had a higher volume of mail for her route. (Com. ¶37). Caputo declined Way's request for assistance, but had approved a request for assistance for a male carrier. (Com. ¶38). Caputo allegedly threatened Way by telling her that she could not

leave until all of her work was finished.  (Com. ¶39).  Way approached her shop steward who took
Way to Barber to lodge a grievance.  (Com. ¶40).  Barber stated that Caputo does have issues with
Way.  (Com. ¶41).  At one point, the shop steward and Caputo met, and Caputo claimed that Way was
artificially inflating her mail count.  (Com. ¶43).  Caputo later accused Way of manipulating her count.
(Com. ¶44).

On November 1, 2002, Way filed an official grievance.  (Com. ¶45).  Way claims that Caputo
was conspiring against her to remove her from her position.  (Com. ¶46).  Caputo and Barber refused
to settle the grievance, and the shop steward sent the grievance to the state steward.  (Com. ¶47).  On
November 19, 2002, Way submitted a leave request for the end of November.  (Com. ¶48).  Caputo
refused to approve Way's leave slip.  (Com. ¶50).  Instead, Caputo gave Way a termination letter that
was back-dated to November 4, 2002.  (Com. ¶51).  After the termination letter, Way was expected
to work for two weeks before her summary firing.  (Com. ¶56).  Way was in distress during this time.
(Com. ¶57-59).  Way claims that on December 6, 2002, Barber met with the shop steward and  offered
Way a two-week suspension rather than termination, but her records would show two infractions, and
if she received another citation, she would be terminated. (Com. ¶63).  Way declined the offer.  (Com.
¶63).  On December 9, 2002, Way went to Caputo's office thinking that her termination was going
to be rescinded, but instead she was handed an amended termination letter.  (Com. ¶64).  Way filed
a grievance on December 10, 2002.  (Com. ¶65).  Caputo called Way at home and yelled at her that
her illness had not occurred at the Post Office.  (Com. ¶68).

<table>
<tr><td><strong>MOTION:</strong></td><td><strong>CONSOLIDATED MOTION TO SUBSTITUTE THE UNITED STATES OF AMERICA IN COUNTS THREE, FOUR, FIVE AND SIX AS PARTY DEFENDANT (Doc. No. 15)</strong></td></tr>
<tr><td><strong>FILED:</strong></td><td><strong>May 6, 2005</strong></td></tr>
</table>

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

The Defendants request that the Court substitute the United States of America as the party defendant in Counts Three, Four, Five and Six. Way objects to the substitution claiming that Caputo and Barber were not within their scope of employment when the events in the Complaint occurred.

Attached to the Motion is a Certification of Scope of Employment By United States Attorney. (Doc. 15-2). In the certification, Paul I. Perez, United States Attorney for the Middle District of Florida certified pursuant of 28 U.S.C. §2679(d) that he had read the Complaint, and that based on information available concerning the events alleged in the Complaint, "United States Postal Service employees, Richard L. Barber and David A. Caputo, were acting within the scope of their employment at the time of the incidents out of which plaintiff's claims arise." (See, Doc. 15-2). Section 2679(d)(1) provides as follow:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

The Attorney General's certification is *prima facie* evidence that the employees were acting within the scope of their employment at the time the incidents occurred. *Flohr v. Mackovjak*, 84 F.3d 386, 390 (11th Cir. 1996). If challenged, the scope of employment certification by the United States

Attorney is to be reviewed *de novo* by the district court. *Id.*, *See also, Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995). Once the Attorney General had made his certification, the burden of proving that the employee acted outside the scope of his employment is on the plaintiff. *Flohr v. Mackovjak*, 84 F.3d at 390. The issue of whether employees' conduct falls within their scope of employment is a matter of state law. *Id.*, *see also, Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir. 1992).

In this case, the Court must apply Florida law because the incidents occurred in Florida. Florida's law of respondeat superior thus controls in this case. ""Under the doctrine of respondeat superior, an employer cannot be held liable for the tortious or criminal acts of an employee, unless the acts were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer. *Iglesia Cristiana La Casa Del Senor v. L.M.*, 783 So.2d 353, 356 (Fla. 3d DCA 2001), citing *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So.2d 1076, 1078 (Fla. 5th DCA 1985). To determine if the employee's conduct was within the scope of employment, the court must determine the following: "(1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." *Iglesia Cristiana La Casa Del Senor v. L.M.*, 783 So.2d at 357. *See also, Powers v. E.R. Precision Optical Corp.*, 886 So.2d 281, 285 (Fla. 1st DCA 2004), and *Masconi v. Regueiro*, 778 So.2d 471, 472 (Fla. 3d 2001).

Taking the facts as a whole, Way has not met her burden of demonstrating that Caputo and Barber were not acting within the scope of their employment. Way asserts that Caputo reprimanded her for minor infractions. As her supervisor, Caputo was employed to reprimand employees. Granted, doing it in public may not have been the most appropriate forum, nonetheless, it would be a duty of

his job.  Caputo determined that Way's route was a part-time position.  As a supervisor, that was a part

of his job duties.  Again, the alleged way he manipulated the mail might not have been appropriate,

however, as a supervisor, this determination was within the type of conduct that he was employed to

perform.  Allowing Way to use a support vehicle or not use a support vehicle was also within Caputo's

job duties.  Handling Way's sick leave was within Caputo's and Barber's job duties.  Citing Way for

failing to use a seatbelt is within Barber's duties as the Postmaster of the Bonita Springs Post Office.

Declining to provide Way with assistance when the amount of mail increased is within Caputo's duties

as a supervisor.  Telling an employee that she cannot go home until her work is finished, again is

within Caputo's duties.  Finally, declining to allow an employee leave is also within Caputo's duties

as a supervisor.  Way has not shown that any of Caputo or Barber's actions fell outside of the type of

conduct that they were employed to perform.  All of the conduct that occurred was substantially within

the time and space of the work day, and was activated at least in part to serve the Postmaster as far as

management of the postal employees.  Further, the actions of Caputo and Barber were discretionary

management decisions concerning reprimands, sick leave, vacation leave, and use of support vehicles

as well as their other employment decisions concerning Way.   Therefore, the Court determines that

the Attorney General was correct in certifying that Caputo and Barber acted within the scope of their

employment with the United States Postal Service concerning the incidents that occurred in this case.

 Pursuant to 28 U.S.C. 2679(d)(1), the Court will permit the United States of America ("United

States") to be substituted as party defendants in Counts Three, Four, Five, and Six.

| MOTION: | MOTION TO DISMISS COUNTS ONE, TWO, THREE, FOUR, FIVE AND SIX AS TO ALL DEFENDANTS (Doc. No. 15) |
|---|---|
| FILED: | May 6, 2005 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

<u>Counts One and Two against the United States</u>

The United States argues that in Counts One and Two, the Court lacks subject matter jurisdiction as to the United States Postal Service. The United States asserts that it is immune from suit based upon sovereign immunity unless it has consented to be sued. Way argues that the Court has jurisdiction over pendent state claims. Count One alleges a breach of employment contract, and Count Two alleges unjust enrichment.

In deciding a motion to dismiss, the Court must accept as true all factual allegations in the Complaint. *Hughes v. United States*, 110 F.3d 765, 767 (11th Cir. 1997); *Brown v. Crawford County, Ga.,* 960 F.2d 1002, 1010 (11th Cir. 1992). The Complaint must be viewed and all reasonable inferences must be made in favor of the plaintiff. *Sawinski v. Bill Currie Ford, Inc.*, 866 F.Supp. 1383, 1385 (M.D. Fla. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). A Complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted); *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001) (*en banc*).

Sovereign immunity shields the Federal Government and its agencies from suit. *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). Congress has waived sovereign immunity

for a wide range of suits.  *Id*.  A waiver of sovereign immunity is strictly construed in terms of its scope, in favor of the sovereign.  *Id*. at 261.  The waiver must be unequivocally expressed in the statutory language. *Id*.  "Federal courts have no jurisdiction to hear a claim against the United States absent a waiver of sovereign immunity."*Miami-Dade County, Fla. v. U.S.*, 345 F.Supp. 2d 1319, 1354 (S.D. Fla. 2004).   The burden of establishing subject matter jurisdiction, and the scope of an explicit waiver of sovereign immunity lies with the plaintiff.  *Id.*, *see also*, *Pace v. Platt*, 228 F.Supp.2d 1332, 1334 (N.D. Fla. 2002).

Way has not alleged a waiver of sovereign immunity for Counts One and Two of the Complaint nor has she set forth any waiver of sovereign immunity in her response to the motions.  The Postal Service's waiver of sovereign immunity does not extend to a breach of contract claim.  *See, Fraginals v. Postmaster General*, 265 F.Supp.2d 1309, 1320-21 (S.D. Fla. 2003).  The Court must have subject matter jurisdiction over the claims before making a determination regarding pendent jurisdiction.  The Court determines that it has no subject matter jurisdiction in Counts One and Two relating to the United States Postal Service based upon the United States Postal Service not waiving sovereign immunity.  Therefore, the Court recommends that Counts One and Two against the United Postal Service be dismissed for lack of subject matter jurisdiction.

Counts One and Two against Caputo and Barber

Caputo and Barber argue that Counts One and Two should be dismissed against them in their individual capacities[3].  Plaintiff alleges in Count One, that Way had an ongoing employment

---

[3] Caputo and Barber were also sued in their official capacities.  By suing them in their official capacities, these claims could be considered to be the same as suing the Postmaster.  In that case, sovereign immunity applies, and these claims should be dismissed.  Even if sovereign

relationship with the United States Postal Service and a condition of that employment was that if a carrier had a certain volume of mail, the position would become full-time. Further, Way alleges that as a member of the Post Office Union, she is entitled to receive all benefits regarding filing a grievance. Way argues that Caputo breached an employment contract that the "Post Office held with Ms. Way" and that Barber is vicariously liable for Caputo's actions.

The elements of a breach of contract under Florida law are: 1) the existence of a valid contract; (2) a material breach of the contract; and (3) damages. *J.J. Gumberg Co. v. Janis Services, Inc.*, 847 So.2d 1048, 1049 (Fla. 4th DCA 2003). Further, a plaintiff must be in privity of contract to recover from a defendant. *See*, *E.C. Goldman, Inc. v. A/R/C Associates, Inc.*, 543 So.2d 1268, 1273 (Fla. 5th DCA 1989). The contracts that Way refers to are the collective bargaining agreement and an employment agreement. Way has failed to show that Caputo or Barber were parties to the contracts or that there was any privity of contract between Caputo or Barber and Way regarding an employment agreement or the collective bargaining agreement. Plaintiff does not raise any argument concerning privity in her Response to the motions. The Court determines that Caputo and Barber were not in privity of contract with Way concerning any of the agreements or contracts alleged, and therefore, Counts One and Two should be dismissed against Caputo and Barber in their individual capacities for failure to state a claim upon which relief may be granted.


Counts Three, Four, Five, and Six against the United States

---

immunity does not apply to their situation, Caputo and Barber in the official capacities had no privity of contract in that they were not parties to either an employment contract or the collective bargaining agreement, and Counts One and Two should be dismissed against them in their official capacities.

The United States argues that Counts Three, Four, Five and Six should be dismissed against the United States[4] for lack of subject matter jurisdiction.  In Count Three, Way alleges a claim for negligent supervision.  In Count Four, Way alleges a claim for assault.  In Count Five, Way alleges a claim for intentional infliction of emotional distress, and in Count Six, Way alleges a claim for defamation per se.  The United States argues that it is immune from suit based upon sovereign immunity.

As stated above, sovereign immunity shields the Federal Government and its agencies from suit.  *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999).  Congress has waived sovereign immunity for a wide range of suits, including suits brought pursuant the Federal Tort Claims Act, 28 U.S.C. §1491.  *Id.*   Without a waiver of sovereign immunity, federal courts lack subject matter jurisdiction.  *Miami-Dade County, Fla. v. U.S.*, 345 F.Supp. 2d 1319, 1354 (S.D. Fla. 2004).  The burden is on Way to establish subject matter jurisdiction and a waiver of sovereign immunity.  *See, Id.*, *see also*, *Pace v. Platt*, 228 F.Supp.2d 1332, 1334 (N.D. Fla. 2002).  A waiver of sovereign immunity is strictly construed in terms of its scope, in favor of the sovereign.  *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999).

Title 28 U.S.C. §2675(a) provides in part as follows:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

---

[4]  The United States has been substituted as party defendant in Counts Three, Four, Five, and Six.

Therefore, a procedural prerequisite for filing suit under the Federal Tort Claims Act is first presenting the claim to the appropriate Federal agency for a determination. *Pace v. Platt*, 228 F.Supp.2d 1332, 1336 (N.D. Fla. 2002). "This exhaustion prerequisite to suit is a jurisdictional requirement that cannot be waived and Plaintiffs must provide proof that they satisfied this requirement to institute suit against the United States. *Id.*, *citing, Lykins v. Pointer, Inc.*, 725 F.2d 645, 646-47 (11th Cir. 1984).

Way alleges in Paragraph 6 of the Complaint that she has complied with all conditions precedent to bringing this action which include bringing a formal complaint with the United States Postal Service and the EEOC which she claims to have attached to the Complaint, however it is attached to the Response (Doc. 20, Exh. 1).   This Final Agency decision includes only claims of discrimination on the basis of sex, physical disability, mental disability and retaliation.  (See, Doc. 20, Exh. 1).   Way has failed to allege in her Complaint or in her Response to the motions that she presented her tort claims in Counts Three, Four, Five and Six to any  appropriate Federal agency and that her claims were denied by the agency in writing.   The Court must strictly construe the waiver of sovereign immunity under the Federal Tort Claims Act.   Further, the requirement of exhaustion is jurisdictional.   The Act clearly requires Way to have submitted her claims to a Federal Agency for consideration, which she failed to do.   The Court determines that it lacks subject matter jurisdiction over Counts Three, Four, Five, and Six, and they should be dismissed.

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS COUNT SEVEN AS TO THE DEFENDANTS DAVID CAPUTO AND RICHARD BARBER OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** |
| **FILED:** | **May 6, 2005** |

**THEREON** it is **RECOMMENDED** that the Motion to Dismiss Count Seven as to Defendants Caputo and Barber be **GRANTED**, and the Motion for Summary Judgment be **DENIED as moot.**

Caputo and Barber argue that they should be dismissed in their individual capacity from Count Seven which contains allegations of gender discrimination. Way claims that she was discriminated against by Caputo's comments of "yuk" and "nails on a chalkboard" when Caputo referred to her. Also, Way claims that she was treated differently when her postal vehicle broke down, when she requested auxiliary help, when she was cited for a seatbelt violation, and when she was required to stay until her work was completed.

Caputo and Barber assert that they cannot be held liable in their individual capacities under Title VII. The law in the Eleventh Circuit is that a Title VII action is against the employer and not against individual employees. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). Way argues that courts have found individuals liable under Title VII. She cites to the case of *Ponton v. Newport News School Bd.*, 632 F.Supp. 1056 (E.D. Va., 1986). In the *Ponton* case, the district court found the individual defendants liable under 42 U.S.C. §1983, and not under Title VII. *Id*. at 1068. Plaintiff also cited to the case of *Kyriazi v. Western Electric Co.*, 476 F.Supp. 335, 340 (D. N.J. 1979) for the proposition that individuals may be liable under Title VII. In *Kyriazi*, the individual defendants were liable under state law claims and not under Title VII. The Court determines that the Caputo and Barber in their individual capacities should be dismissed from Count Seven.

The United States also argues that the proper defendant when the plaintiff is a federal employee is the head of the agency.  Pursuant to 42 U.S.C. §2000e-16(c), the proper defendant in a civil action filed by a federal employee alleging a violation of Title VII is "the head of the department, agency, or unit, as appropriate."  *See also*, *Bryant v. U.S. Dept. of Agriculture*, 967 F.2d 501, 503 (11th Cir. 1992).  The only proper defendant in Count Seven is John E. Potter, Postmaster General, U.S. Postal Service.  Therefore, Caputo and Barber in their official capacities should be dismissed.

| | |
|---|---|
| **MOTION:** | **MOTION FOR MORE DEFINITE STATEMENT IN COUNT SEVEN (Doc. No. 15)** |
| **FILED:** | **May 6, 2005** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

Defendants argue that a more definite statement is appropriate for Count Seven where Way alleges that John E. Potter, Postmaster General, U.S. Postal Service (Postmaster) violated her rights under Title VII.  Rule 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e).  The federal system employs notice pleading and therefore, motions for more definite statement are disfavored.  *Scarfato v. National Cash Register Corp.* 830 F.Supp. 1441, 1443 (M.D. Fla. 1993).  The pleading must be so vague or ambiguous that "the party cannot reasonably be expected to respond."  *Id.* The basis for requiring a more definite statement is not that the complaint lacked details but rather that the complaint is unintelligible and the defendant is unable to respond. *Securities and Exchange Commission v. Digital Lightwave, Inc.*, 196 F.R.D. 698, 700 (M.D. Fla.

2000).  Only if a defendant is unable to respond by a simple denial "in good faith, without prejudice," will the Court grant a motion for more definite statement.  *Id.*

The Complaint is a shotgun pleading in that Count Seven incorporates by reference the allegations of other Counts in the Complaint. Therefore, Count Seven has factual and legal conclusions that are not relevant.  Shotgun pleadings are disfavored by the Eleventh Circuit.  *See, Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295-96 n.9 (11th Cir. 2002); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *Cramer v. State of Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997).   The Court determines that Way should be required to amend her Complaint.

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR JUDICIAL STAY (Doc. No. 20, 21)** |
| **FILED:** | **June 6, 2005** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

**CONCLUSION**

The Court respectfully recommends the following:

1) The United States of America be substituted as party defendant in Counts Three, Four, Five and Six, and the Defendant Richard Barber, individually and in his official capacity be dismissed from Count Three, and the Defendant David Caputo individually, and in his official capacity be dismissed from Counts Four, Five, and Six.

2) Counts One and Two against the United States Postal Service be dismissed for lack of subject matter jurisdiction.

3) Counts One and Two against Caputo and Barber in their individual and official capacities be dismissed.

4) Counts Three, Four, Five, and Six against the United States be dismissed for lack of subject matter jurisdiction.

5) Caputo and Barber in their individual and official capacities be dismissed from Count Seven.

6) Way be required to file an amended complaint containing only the allegations relating to her claim for gender discrimination in violation of Title VII.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this 18th   day of October, 2005.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:

All Parties of Record